IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GERMANTOWN COPY CENTER, INC.

    v. : Civil Action No. DKC 10-2799

COMDOC, INC.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Telephone Consumer Protection Act case is a motion to dismiss or, in the alternative, for summary judgment (ECF No. 6) filed by Defendant ComDoc, Inc. ("ComDoc"). As the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, the motion to dismiss or for summary judgment will be denied.

**I. Background**

The Telephone Consumer Protection Act, or TCPA, forbids the sending of unsolicited fax advertisements. *See* 47 U.S.C. § 227(b)(1)(C). Congress passed the TCPA in an attempt to end the harmful consequences of "junk faxes," namely the "depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone line." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005). On October 8, 2010, Plaintiff Germantown Copy Center, Inc. ("Germantown

Copy"), a Maryland corporation, filed this putative Rule 23 class action under the TCPA against ComDoc, an Ohio corporation. Germantown Copy's complaint alleges that ComDoc violated the TCPA by sending it an unsolicited advertisement by fax. (ECF No. 1 ¶ 14).

Germantown Copy insists that the advertisement it received, which was also sent to "thousands of other consumers," is part of ComDoc's "uniform policy and procedure" of sending "unsolicited advertisements to thousand of consumers" over the course of several years. (*Id.* ¶¶ 14, 19, 20). For each unsolicited fax they received, Germantown Copy and the other class members would be entitled to statutory damages of $500 or the amount of their actual loss, whichever is greater. (*Id*. ¶ 10 (citing 47 U.S.C. § 227(b)(3)). As a result, the complaint alleges that "the matter in controversy exceeds the sum or value of $5,000,000 in the aggregate for the class, exclusive of interest and costs." (*Id.* ¶ 4).

On December 16, 2010, ComDoc filed the present motion to dismiss, arguing that Germantown Copy has not established subject matter jurisdiction and has failed to state a claim under the TCPA. (ECF No. 6). Germantown Copy opposed on January 7, 2001. (ECF NO. 8). ComDoc filed a reply shortly thereafter. (ECF No. 13).

**II. Analysis**

   **A.   Subject Matter Jurisdiction**

ComDoc first moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), as ComDoc believes that the complaint does not establish any basis for subject matter jurisdiction in this case. The complaint alleges both federal question jurisdiction and diversity jurisdiction as sources of subject matter jurisdiction. Although ComDoc is correct that the TCPA does not provide for federal question jurisdiction, Germantown Copy has alleged enough to establish diversity jurisdiction.

The complaint asserts that the court "has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. § 1331." (ECF No. 1 ¶ 3). As the United States Court of Appeals for the Fourth Circuit and several other courts have now made clear, "jurisdiction over private TCPA actions may not be premised on the general federal-question jurisdiction conferred by 28 U.S.C. § 1331." *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1158 (4th Cir. 1997); *see also Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101, 1106-07 (N.D.Cal. 2007) (listing cases). Federal question jurisdiction is precluded by the explicit language of the statute, which provides for a private right of action only "if otherwise permitted by the laws or rules of court of a State . . . in an appropriate court of that State." 47 U.S.C. §

227(b)(3). Evidently, Germantown Copy now concedes this point, as it does not argue for federal question jurisdiction in its opposition.

The complaint also alleges, however, that the court has jurisdiction "pursuant to 28 U.S.C. § 1332(d)(2)(A)," a portion of the Class Action Fairness Act ("CAFA"). (ECF No. 1 ¶ 4). CAFA modified the traditional rules of diversity jurisdiction to provide original jurisdiction for class actions with minimal diversity, an aggregate amount-in-controversy exceeding $5 million, and a class size greater than 100 people. Thus, under CAFA, Germantown Copy would be able to establish jurisdiction in this court if its class action is large enough, even if its own individual claims do not meet the ordinary diversity and amount-in-controversy requirements.

ComDoc briefly observes that "there is disagreement among the courts as to whether diversity jurisdiction exists at all under the TCPA." (ECF No. 6, at 8). Nevertheless, it chooses not to press the argument that the TCPA does not allow for diversity jurisdiction. That was the correct choice, as this court has held that diversity jurisdiction may be used to bring to private actions under the TCPA in federal court. *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F.Supp.2d 736, 741 (D.Md. 2008). Although the Fourth Circuit has yet to express its agreement, every circuit court to address the issue

has indicated that diversity jurisdiction may be exercised over private TCPA claims. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008); *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1116-18 (10th Cir. 2007); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 337-43 (2d Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450-51 (7th Cir. 2005).

ComDoc instead protests that this case does not meet CAFA's $5 million amount-in-controversy requirement, despite the complaint's allegation of more than $5 million in damages. Where the complaint provides an amount-in-controversy, defendants attempting to dismiss "shoulder a heavy burden." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010); *accord Iguana Co. Ltd. P'ship v. Baltimore Ctr. for Performing Arts, Inc.*, 651 F.Supp. 1348, 1349 (D.Md. 1987) (noting that, because of the "heavy burden" borne by defendants in seeking dismissal for failure to satisfy the jurisdictional amount, "such dismissals are fairly rare"). ComDoc has not carried that burden here.

For one, ComDoc's argument skirts the "black letter rule" that the amount-in-controversy is to be decided "from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith.'" *Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C.*,

491 F.3d 171, 176 (4th Cir. 2007) (quotation marks omitted). Consequently, "[i]f the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed." *JTH Tax, Inc.*, 624 F.3d at 638 (quotation marks omitted). In this case, the complaint does indeed claim a sum exceeding $5 million in explicit terms. (ECF No. 1 ¶ 4).

ComDoc attacks the $5 million allegation by characterizing it as "conclusory" and "self-serving." (ECF No. 6, at 8). Yet attaching such labels to Germantown Copy's sum does not prove that the number is alleged in bad faith or legally certain to be unrecoverable. "A plaintiff's allegation that the matter in controversy exceeds the jurisdictional amount requirement, even when it is in cursory form, has been held to be sufficient by a significant number of federal courts." 14AA Charles Alan Wright, et al., *Federal Practice and Procedure* § 3702 (4th ed. 2011 supp.); *see also, e.g.*, *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) ("If an in-state plaintiff suing an out-of-state defendant wishes to be in federal court, all the plaintiff needs to do is allege an amount in excess of [the jurisdictional amount] and he will get his way.") The complaint alleges facts supporting Germantown Copy's claim for more than $5 million. In particular, it avers that ComDoc sent

6

"thousands" of unsolicited faxes over "several years."  Unlike some other remedial statutes, such as the Truth in Lending Act, the TCPA contains no damages cap.  Thus, it is certainly conceivable at this stage that a $5 million damage award could result from such circumstances, given that each one of these "thousands" of violations would result in guaranteed damages of $500 or more.  *See* 47 U.S.C. § 227(b)(3).

ComDoc also argues that Germantown Copy cannot invoke CAFA's provisions because several courts have declined to certify TCPA class actions.  (ECF No. 6, at 9).  These courts have determined that one fact issue – whether each putative class member actually consented to the receipt of fax transmissions – rendered a class action inappropriate.  Yet ComDoc's cases do not prove to a legal certainty that a class action will fail here.  To be sure, if ComDoc could show that a class action is not viable in this case as a clear legal matter, that finding would prevent Germantown Copy from using CAFA to justify jurisdiction.  *See, e.g.*, *Holster v. Gatco, Inc.*, 618 F.3d 214, 216-18 (2nd Cir. 2010) (finding CAFA did not apply to TCPA suit where applicable state law barred such class actions).  Yet there is no authority stating that a class action may *never* be certified under the TCPA.  To the contrary, many courts have in fact certified "junk fax" class actions under the Act.  *See, e.g.*, *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr.*,

*Ltd.*, 679 F.Supp.2d 894, 899 (N.D.Ill. 2010); *CE Design Ltd v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 143 (N.D.Ill. 2009); *Hinman v. M&M Rental Ctr.*, 545 F.Supp.2d 802, 808 (N.D.Ill. 2008); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D.Wash. 2007). Thus, it is anything but a foregone conclusion that class certification will be denied. ComDoc's citations to some denials of class certification do not establish the "legal certainty" that a class action will fail.

Fundamentally, ComDoc's argument is an invitation to make a premature ruling on class certification that is unnecessary and unwarranted under the plain language of CAFA. CAFA applies to "any class action before or after the entry of a class certification order." 28 U.S.C. § 1332(d)(8); *see also* 28 U.S.C. § 1332(d)(1)(B) (defining "class action" as, in relevant part, "any civil action *filed* under rule 23 of the Federal Rules of Civil Procedure" (emphasis added)). Any "pronouncement that this was not a class action . . . [would be] in tension with this provision (which effectively treats as provisional class actions those suits visibly framed as such, notwithstanding flaws that may be subject to adjustment or revision before a class can be certified)." *Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009). The jurisdictional hook under CAFA is not whether class certification will ultimately prove successful, but rather

whether the representative plaintiff intends to seek class certification for a purported class meeting CAFA's requirements. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) ("[F]ederal jurisdiction under the Class Action Fairness Act does not depend on certification."); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (finding CAFA reaches "proposed," as opposed to actually certified, classes). That class certification may be difficult, or ultimately unsuccessful, is irrelevant to the jurisdictional issue. *See, e.g.*, *Gene & Gene LLC*, 541 F.3d at 324-25 (finding subject matter jurisdiction pursuant to CAFA in TCPA case while decertifying class action); *cf. Brill*, 427 F.3d at 448 ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."); *McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957) (stating that plaintiffs may obtain federal jurisdiction even when "it is apparent on the face of the claim" that the claim to the requisite amount is subject to a "valid defense"). Thus, the perceived class certification issues that ComDoc raises are no bar to jurisdiction here.

Lastly, ComDoc submits an affidavit from the General Manager of OEM SupplyCo. ("OEM"), the ComDoc subsidiary that purportedly sent the faxes in question. This affidavit avers that OEM had a policy during the relevant time period "to only

9

fax information to those businesses that granted prior permission to do so." (ECF No. 6-1 ¶ 3). ComDoc then reasons that, in light of this policy, "it is beyond dispute that Germantown [Copy] will not be able to cobble together a sufficient class necessary to establish the requisite amount in controversy." (ECF No. 6, at 9).

Here again, ComDoc is confusing jurisdictional issues with issues going to the merits of Germantown Copy's claims. It asks the court to engage in deeper factual analysis, even though "determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Spelman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). The point bears repeating: at this phase, the success of Germantown Copy's case is effectively assumed. The only relevant question is whether Germantown Copy and the rest of the putative class would be able to collect all that it asks for as a matter of law. *See, e.g.*, *Griffin v. United States*, 590 F.3d 1291, 1292 n.1 (Fed. Cir. 2009) ("The amount in controversy for jurisdictional purposes must be ascertained by the requests in the pleadings without consideration of success on the merits." (quotation marks omitted); *Travelers Cas. & Sur. Co. of Am., Inc. v. Northwestern Mut. Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007) (finding it inappropriate to dismiss claim for failure to meet amount-in-controversy requirement, even where

plaintiff's claim was "unlikely" and required assumption of "a giant if"); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1332 n.9 (11th Cir. 2006) ("[C]ourts cannot look past the complaint to the merits of a defense that has not yet been established.").

For all these reasons, the complaint will not be dismissed for lack of subject matter jurisdiction.

**B.      Summary Judgment**

ComDoc also moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56. Because this portion of ComDoc's motion relies on matters outside the pleadings, the court will construe it as a motion for summary judgment. *United States v. Purdue Pharma L.P.*, 600 F.3d 319, 325-26 (4th Cir. 2010).

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

ComDoc argues that it is entitled to summary judgment because the TCPA only bars "unsolicited" advertisements by fax. A fax does not constitute an unsolicited advertisement if it is sent with the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(4) (2003). According to OEM's General Manager, Germantown Copy consented to the receipt of OEM's advertising faxes on March 3, 2003. (ECF No. 6-1 ¶ 4). ComDoc contends summary judgment is appropriate because Germantown Copy "failed to submit any affidavit stating that no consent was given." (ECF No. 13, at 2).

Germantown Copy submitted a sworn affidavit from Harold Springer, Operations Manager of Germantown Copy since 2004. That affidavit flatly states that Germantown Copy "has not given ComDoc consent to receive advertisements via facsimile." (ECF No. 8-1 ¶ 6). It lists nine "unsolicited" faxes. (*Id.* ¶ 7). And Harold notes that, "[s]ince 2004 or earlier, [Germantown Copy] has had a policy of refusing to consent to solicitations from advertisers to send us advertisements via facsimile or email." (*Id.* ¶ 3).

That affidavit is further buttressed by the affidavit of Alin Springer, Operations Manager of Germantown Copy from its founding until 2004. Alin confirms that, "[s]ince its founding[,] [Germantown Copy] has had a policy of refusing to consent to solicitations from advertisers to send us advertisements via facsimile or email." (ECF No. 8-2 ¶ 3). He notes that if someone from ComDoc had called his business, something he is "reasonably certain" did not happen, Germantown Copy "would not have consented to any advertisements via facsimile." (*Id.* ¶¶ 6-7). And he lists nine unsolicited fax advertisements. (*Id.* ¶ 9).

Summary judgment cannot be granted here in light of the competing affidavits from ComDoc and Germantown Copy. *See Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) (finding summary judgment could not be granted in the face of

13

conflicting affidavits).  Genuine disputes over material facts remain.

**III. Conclusion**

For the foregoing reasons, the motion to dismiss or for summary judgment will be denied.  A separate order will follow.

                                    /s/
                           DEBORAH K. CHASANOW
                           United States District Judge